UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| H. CRAIG FOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 10 C 2580 |
| v. | ) |
| | ) Judge George M. Marovich |
| AMERICAN ECONOMY INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

After a flood at the building plaintiff Dr. H. Craig Fox ("Dr. Fox") owned and used for his podiatry practice, Dr. Fox filed in the Circuit Court of DuPage County a suit against Defendant American Economy Insurance Company ("American"). American removed the suit to this Court.[1] American has filed a motion for summary judgment. For the reasons set forth below, the Court grants in part and denies in part defendant's motion for summary judgment.

**I. Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the

---

[1]The Court has jurisdiction over this case, because the parties are diverse and the amount in controversy is greater than $75,000.00. Plaintiff Dr. Fox is a citizen of Illinois. Defendant American Economy Insurance Company is a citizen of Indiana and of Washington.

fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of its duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, __ F.3d __, __, slip. op. at 2, 2012 WL 130456 at *1 (7th Cir. 2012). Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. At the summary judgment stage, it does not suffice to rely on complaint allegations. Nor is it enough for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth *admissible* evidence of his or its version of the fact.

The Court notes at the outset that defendant several times disputed plaintiff's facts without citing evidence. The result is that several of plaintiff's statements (including ¶¶ 66, 67, 71, 72, 81 and 82) are deemed admitted, because plaintiff supported those statements with evidence but defendant did not cite evidence to dispute them. Defendant also repeatedly argues that Dr. Fox's deposition testimony, merely because he is a plaintiff, cannot constitute evidence unless corroborated by other evidence. This argument fails. Rule 56 lists depositions as a form of evidence admissible at the summary judgment stage. Fed. R. Civ. P. 56(c). As the Seventh Circuit explained in *Payne v. Pauley*, 337 F.3d 767, 770-71 (7th Cir. 2003), a "nonmoving party's own affidavit or deposition can constitute affirmative evidence to defeat a summary judgment motion." *Payne*, 337 F.3d at 770-771 (explaining that when testimony or affidavits are rejected, it is not because they are self-serving or uncorroborated but rather because they lack a basis on personal knowledge). So long as the testimony is based on personal knowledge (and, here, defendant does not suggest it is not), Dr. Fox's deposition testimony is admissible for summary judgment purposes.

The following facts are undisputed unless otherwise noted.

Dr. Fox ran his podiatry practice out of a building he owned at 75 S. Broadway Street in Coal City, Illinois. The building was insured, during the period of August 1, 2003 through August 1, 2004, by a policy (the "Policy") issued by American. The Policy included an Ordinance or Law Coverage Endorsement, which provided, in relevant part:

> B. Application of Coverage(s)
>
> The coverage(s) provided by this endorsement apply only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**
>
> 1. The ordinance or law:
>
>    a. Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and
>    b. is in force at the time of loss.
>
>    But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.
>
> \* \* \*
>
> D. Coverage
>
> 1. Coverage A–Coverage for Loss to the Undamaged Portion of the Building
>
>    With respect to the building that has sustained covered direct physical damage, we will pay under coverage A for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.
>
> \* \* \*
>
> 2. Coverage B–Demolition Cost Coverage

    With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.  Paragraph E.6.d. Section I – Property, Loss Conditions does not apply to Demolition Cost Coverage.

  3. Coverage C–Increased Cost of Construction Coverage

    a. With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

    (1) Repair or reconstruct damaged portions of that building; and/or

    (2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;
when the increased cost is a consequence of the ordinance or law.

    However:

    (1) This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

    (2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled. Paragraph E.6.d. Section I–Property, Loss Conditions does not apply to Increased Cost of Construction Coverage.

    \* \* \*

E. Loss Payment

    \* \* \*

  3. The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the combined limit of $150,000, applicable to the following loss payment provisions:

> a. For the Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.
>
> b. With respect to the Increased Cost of Construction;
>
> (1) We will not pay for the increased cost of construction:
>
> (a) Until the property is actually repaired or replaced, at the same or another premises, and
>
> (b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(Ordinance and Law Endorsement).

In January 2004, a pipe in Dr. Fox's building froze and burst. The broken pipe caused water damage to the first floor of Dr. Fox's building. Dr. Fox notified American, which, among other things, paid Dr. Fox $33,651.74 for the physical damage to the building.

When it came time for Dr. Fox to repair the damage to the building, the applicable building code stood in the way. Coal City had implemented the 2000 International Building Code and its requirement that a building be constructed such that its foundation extends at least 42 inches above the frost line. Dr. Fox's building was built slab on grade, such that the floor joists were a few inches above the ground. The parties agree that in order to repair the damaged first floor of the building, Dr. Fox would have to bring the building into compliance, i.e., increase the foundation to 42 inches.

Dr. Fox hired an architect, Gregory Lyons ("Lyons"). According to Lyons, in order to raise the foundation of Dr. Fox's building, Dr. Fox would have to shore up the perimeter of the building and the interior support walls in order to prevent the building from collapsing while the

foundation was replaced. Dr. Fox believed that shoring up the building was dangerous, and he decided, instead, to demolish the building. At no time did Lyons tell Dr. Fox that the building code mandated that he demolish the building. Nor did Coal City issue a notice or otherwise inform Dr. Fox that he was required to demolish the building. It is undisputed that the building code did not mandate the demolition of either the damaged or undamaged portions of the building. Still, Dr. Fox hired a demolition company to demolish the building and paid them $12,900 for their services. American reimbursed Dr. Fox for the cost of demolition.

Along the way, Dr. Fox and American communicated via letter, phone call and in person. A few times, Dr. Fox met an American claims adjuster at a Home Depot parking lot in order to exchange documents. The parties dispute how well they communicated.

On March 5, 2004, American sent Dr. Fox a letter. In the letter, American stated that, under the Ordinance or Law Coverage Endorsement, Dr. Fox's maximum coverage was $150,000 less the $12,900 for the demolition, leaving $137,100. In the letter, American also quoted the policy language, which states, "We will not pay for the Increased Cost of Construction (a) until the property is actually repaired or replaced . . . as soon as reasonably possible after the loss or damage, not to exceed two years." American noted that it expected the building to be reconstructed within four months.

On April 20, 2004, American sent another letter to Dr. Fox. The letter requested from Dr. Fox specific documents, including a copy of repair estimates from his contractor, an estimate of the time of completion of the repairs and a copy of repair bills. The letter also asked Dr. Fox to contact American when the repairs were 80% completed. Dr. Fox telephoned American. Dr. Fox told the claims adjuster that the construction company had already given her a repair estimate and that his architect (Lyons) had already given her an estimate on the timing of construction.

On May 25, 2004, American sent Dr. Fox another letter. In this letter, American asked Dr. Fox to let the claims adjuster know when he obtained work permits and when the work would start. The letter also requested the documents American had requested in the April 20, 2004 letter. The parties dispute whether Dr. Fox ever provided the documents. Dr. Fox put forth evidence that he did, and American put forth evidence that he did not.

On July 7, 2004, American sent Dr. Fox another letter. This time, American stated that it expected the repairs to be completed within four months after the building was demolished and permits secured. American also requested documents and asked for a signed Proof of Loss. This was the first time American requested that Dr. Fox sign a Proof of Loss. The parties dispute whether Dr. Fox sent American a signed Proof of Loss and the other documents requested in the July 7, 2004 letter. Dr. Fox put forth evidence that he did, and American put forth evidence that he did not.

American sent another letter to Dr. Fox on August 9, 2004. In the letter, American requested that Dr. Fox comply with its previous requests within 30 days. The parties dispute whether Dr. Fox responded.

On November 6, 2004, American sent Dr. Fox another letter. In this letter, American stated that Dr. Fox had not complied with American's prior requests for documents and a signed Proof of Loss. In the letter, American also stated that if Dr. Fox did not comply within thirty days, then American would deny further liability for Dr. Fox's claim. It is undisputed that Dr. Fox did not respond to the November 6, 2004 letter.

On December 15, 2004, American sent a final letter to Dr. Fox. In it, American stated:

> Due to your systematic and repeated failure to comply with your duties and obligations under Policy 02 BO 729315, American Economy Insurance Company denies any and all liability to you for additional payments or claims arising from or related to the loss of January 19, 2004. In communications and correspondence including, but not limited to February 4, 2004, March 18, 2004, April 20, 2004, July 7, 2004, August 9, 2004 and November 6, 2004, all of which are

> incorporated by reference, you have been informed of your duties under the
> policy and of your repeated failures in compliance. In correspondence dated
> November 6, 2004, you were extended one final opportunity to cure your
> previous refusals to discharge your policy obligations. You chose to disregard the
> November 6th correspondence as well. Accordingly you are in material breach of
> the insurance policy and American Economy denies any and all further liability to
> you for the loss of January 19, 2004.

(December 15, 2004 letter).

Once he had received the December 15, 2004 letter, Dr. Fox stopped trying to rebuild his building. He decided that he could not take the risk of spending money to build without the assurance that American would reimburse him under the Policy. Dr. Fox did not construct a new building and, thus, did not incur increased construction costs. Dr. Fox still intends to rebuild, but only if he will be reimbursed under the Policy.

Dr. Fox filed a two-count complaint. In Count I, Dr. Fox seeks a declaration that American "committed an anticipatory repudiation of the Policy on December 15, 2004, and thereby excused Fox from the condition precedent that he repair or replace the building within two years of January 19, 2004, and that therefore Fox is still entitled to the funds available under Coverages A, B, and C of the Ordinance or Law Coverage endorsement." In Count II, Dr. Fox seeks damages for anticipatory repudiation.

## II.  **Summary Judgment Standard**

In a diversity case, such as this one, the Court applies state substantive law and federal procedural law. *Erie RR v. Tompkins*, 304 U.S. 64, 78 (1938).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III. Discussion

#### A. Anticipatory breach

Dr. Fox's theory in this case is that he can still recover under the policy–despite not meeting the condition precedent of building within a reasonable time (not to exceed two years)–because American committed an anticipatory repudiation of the insurance contract, thereby relieving Dr. Fox of the requirement that he build within a reasonable time (not to exceed two years). Dr. Fox's theory is based on language in *Bituminous Casualty Corp. v. Commercial Union Ins. Co.*, 652 N.E.2d 1192, 1197 (Ill.App.Ct. 1st Dist. 1995) ("When one party to a contract repudiates his contractual duties before time for performance, the other party may elect to treat the contract as ended. In such cases the nonbreaching party is not required to tender performance or to comply with conditions precedent."). American does not argue that Dr. Fox's theory is wrong or inapplicable to these circumstances. Instead, American argues that, as a matter of law, its conduct did not constitute anticipatory repudiation of the insurance policy.

The parties agree that under Illinois law, "anticipatory repudiation is actionable as a breach of contract when–and only when–the repudiating party unequivocally and without justification renounces its duty to perform the contract on its date of performance." *Draper v.*

*Frontier Ins. Co.*, 638 N.E.2d 1176, 1181 (Ill.App.Ct. 2nd Dist 1994); *Busse v. Paul Revere Life Ins. Co.*, 793 N.E.2d 779, 783 (Ill.App.Ct. 1st Dist. 2003). Dr. Fox believes that American's December 15, 2004 letter constituted anticipatory repudiation. In the letter, American stated:

> Due to your systematic and repeated failure to comply with your duties and obligations under Policy 02 BO 729315, American Economy Insurance Company denies any and all liability to you for additional payments or claims arising from or related to the loss of January 19, 2004. In communications and correspondence including, but not limited to February 4, 2004, March 18, 2004, April 20, 2004, July 7, 2004, August 9, 2004 and November 6, 2004, all of which are incorporated by reference, you have been informed of your duties under the policy and of your repeated failures in compliance. In correspondence dated November 6, 2004, you were extended one final opportunity to cure your previous refusals to discharge your policy obligations. You chose to disregard the November 6th correspondence as well. Accordingly you are in material breach of the insurance policy and American Economy denies any and all further liability to you for the loss of January 19, 2004.

(December 15, 2004 letter).

American argues that its December 15, 2004 letter does not constitute anticipatory repudiation, because the letter was justified. American has put forth evidence that it repeatedly requested that Dr. Fox provide documents in support of his claim and to show progress toward rebuilding the building. American has put forth evidence that Dr. Fox failed to do so. American also put forth evidence that it asked Dr. Fox to provide a signed Proof of Loss and that he never did so. These facts, however, are disputed. Dr. Fox has put forth evidence that he provided documents and that he telephoned American to discuss most of the letters American sent him. Dr. Fox has also put forth evidence that he mailed in the required signed Proof of Loss.

Dr. Fox has put forth sufficient evidence from which a reasonable jury could reach a verdict in his favor on his claim for anticipatory breach. Accordingly, summary judgment is not appropriate.

### B. Policy language

#### 1. Coverage A

Next, American argues that even if its alleged anticipatory repudiation relieves Dr. Fox of the condition precedent of building within two years, American still is not liable to Dr. Fox due to the language of the Policy. First, American argues that the building code did not require demolition and that Coverage A of Ordinance or Law Coverage Endorsement does not apply unless the code required demolition. This seems like an odd tack for American to take after paying Dr. Fox for the demolition under Coverage B (which contains the same language). Still, Dr. Fox does not argue that American has waived this argument or is estopped from making it, so the Court will consider it.

The parties agree that Illinois law applies. Under Illinois law, insurance policies are interpreted the same way as other contracts. *Nicor, Inc. v. Associated Elec. & Gas Ins. Serv. Ltd.*, 223 Ill.2d 407, 416 (Ill. 2006). A court must "construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Nicor*, 223 Ill.2d at 416. Clear and unambiguous provisions are applied as written, and words are given their plain meaning. *Id.*

American argues that the language of Coverage A of the Ordinance or Law Coverage Endorsement does not apply to Dr. Fox's loss. Coverage A provides, in relevant part:

> With respect to the building that has sustained covered direct physical damage, we will pay under coverage A for the loss in value of the undamaged portion of the building *as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building*.

(Ordinance or Law Coverage Endorsement) (emphasis added). American argues that the building code did not *require* demolition.

The undisputed evidence supports American's argument that the building code did not require demolition. It is undisputed that Coal City never informed Dr. Fox that he was required to demolish the building. The building code did, of course (as even American concedes), require that Dr. Fox increase the foundation to 42 inches. The undisputed evidence, however, is that the foundation could be increased to 42 inches *without* demolition, by shoring up the perimeter of the building and the interior support walls so that the building would not collapse while the foundation was replaced. That Dr. Fox did not like that option (because he thought it was dangerous) does not mean that demolition was required by the building code.

Even though it is undisputed that the building code did not "mandate" that Dr. Fox demolish the building and that Dr. Fox's architect never told Dr. Fox that the building code mandated that he demolish the building, Dr. Fox argues that the term "requires" in Coverage A means something less than "mandates." Dr. Fox may be partly correct: even if the building code did not specifically mention that the only proper method of raising the foundation was to demolish the building, the building code still might be said to "require" demolition if the only means of raising the foundation was to demolish the building. That is not, however, the case here. Here, there was a means other than demolition available to comply with the code: shoring up the building. It was Dr. Fox's fear that shoring up the building was dangerous, not the requirements of the building code, that caused him to choose demolition.

American has shown there is no issue of material fact and that it is entitled to judgment as a matter of law with respect to the portions of Dr. Fox's claims that seek to recover under Coverage A. American is granted summary judgment on those portions of Dr. Fox's claims.

    **2.**    **Coverage B**

Next, American argues that it has already paid Dr. Fox for his loss under Coverage B, which covers the cost of demolition itself. It is undisputed that American has already paid Dr. Fox for the cost of demolition. Dr. Fox does not object to entry of summary judgment with respect to Coverage B.

Accordingly, the Court concludes that American has shown that there are no material issues of fact and that it is entitled to judgment as a matter of law with respect to the portions of Dr. Fox's claims that seek coverage under Coverage B of the Ordinance or Law Coverage Endorsement.

### 3. Coverage C

Finally, American argues that Dr. Fox cannot recover under Coverage C, because Dr. Fox did not repair or replace the building "as soon as reasonably possible after the loss or damage, not to exceed two years," as is required by the Ordinance or Law Coverage Endorsement ¶ E(3)(b)(1)(b).

The Court rejects this argument. This is the very condition precedent that Dr. Fox seeks to relieve himself of by making his claims for anticipatory repudiation. American does not argue that Dr. Fox's legal premise (that if he establishes anticipatory repudiation then he need not comply with the condition precedent) is mistaken. This Court has already concluded that there is an issue of fact with respect to Dr. Fox's claims for anticipatory repudiation. For the same reasons, there are issues of fact as to whether American is liable to Dr. Fox under Coverage C.

## IV. Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendant American Economy Insurance Company's motion for summary judgment. American Economy

Insurance Company is granted summary judgment with respect to the portions of Counts I and II that seek damages under Coverage A or Coverage B of the Ordinance or Law Coverage Endorsement.

ENTER:

George M. Marovich
United States District Judge

DATED: February 14, 2011